William M. Audet (CA State Bar #117456)
waudet@audetlaw.com
Joshua C. Ezrin (CA State Bar #220157)
jezrin@audetlaw.com
AUDET & PARTNERS, LLP
711 Van Ness, Suite 500
San Francisco CA 94102-3229
Telephone: 415.982.1776
Facsimile: 415.576.1776

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN HALL, on behalf of himself and all others similarly situated,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC.,<br><br>　　　　Defendant | Case No:<br><br>CLASS ACTION COMPLAINT<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Benjamin Hall brings this action on behalf of himself and all others similarly situated against Defendant Volkswagen Group of America, Inc., stating as follows, upon information and belief, except as to the facts pertaining to himself which are based on personal knowledge:

## I. INTRODUCTION

1. This case concerns the deliberate circumvention of federal and state environmental laws and regulations by Defendant Volkswagen Group of America, Inc. ("VWoA"). VWoA and its parent company Volkswagen A.G. and VW A.G's subsidiary Audi A.G. manufactured and sold hundreds of thousands of diesel powered passenger cars to consumers in the United States, which it falsely touted as being "clean" and efficient, and all of which contained software (or "defeat device") that was designed to and did fool governmental testing programs into finding the cars to be emissions compliant. These cars were certified for sale in the U.S. while in fact expelling 40 times the allowed amount of nitrous oxide (NOx) into the air. Cynthia Giles, Assistant Administrator for the Office of Enforcement and Compliance Assurance at the Environmental Protection Agency, stated in a September, 18, 2015 EPA news release announcing a notice of violation served upon VWoA that "[u]sing a defeat device in cars to evade clean air standards is illegal and a threat to public health."

2. Beyond the public health threat, the vehicles were not as advertised and were far from being "clean," and when they are brought into compliance as will be required under an EPA-mandated recall, they will suffer from reduced performance and reduced miles per diesel gallon consumed. The vehicles will accordingly be less desirable both to their current owners, who would not have purchased them had the truth been told (indeed, could not have purchased them as they would not have passed EPA certification), and will also be worth less in the secondary market.

## II. PARTIES

3. Plaintiff Benjamin Hall is and was at all relevant times a resident of Antelope, California.

4. Defendant Volkswagen Group of America, Inc. ("VWoA" or "Defendant") is a corporation organized and existing under the laws of the state of New Jersey, with its principal place of business in Herndon, Virginia. VWoA is duly qualified and licensed to do business in the State of California, and in fact does business in all 50 states (including also the District of Columbia).

### III. JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy in this class action exceeds $5,000,000, exclusive of interest and costs, and some members of the class, including Plaintiff Hall, are citizens of states other than the states in which VWoA is incorporated and has its principal places of business.

6. This Court has personal jurisdiction over VWOA because it duly qualified and licensed to do business and in fact does substantial business in the State of California.

7. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Among other things, VWOA has operations and sales in this District.

### IV. FACTUAL ALLEGATIONS

#### A. **VWoA's Marketing Campaign for "CleanDiesel"**

8. VWoA is a wholly-owned subsidiary of non-defendant Volkswagen A.G. [Aktiengesellshaft], the largest automobile manufacturing company in the world. Volkswagen A.G., headquartered in Wolfsburg, Germany, is the parent company of well-known brands including Volkswagen, Porsche, Audi, Lamborghini, Bentley, SEAT, and Skoda. It also sells motorcycles under the Ducati brand; and commercial vehicles under the MAN, Scania, NeoPlan and Volkswagen Commercial Vehicles brand names. Of these marques, Volkswagen, Audi, Bentley, Porsche, Bugatti and Lamborghini cars are marketed and sold in the United States to the general car-buying public through VWoA.

9. Since the late 2000s, VWoA has marketed diesel-powered versions of certain of its Volkswagen and Audi cars, specifically, the Volkswagen Beetle, Jetta, Passat and Audi A3 as being better for the environment in that they polluted less, and as being more efficient in

terms of gas mileage than previous diesel powered cars, while maintaining brisk performance in terms of the torque produced by the motors and consequent acceleration of the cars when driven. Indeed, the brochure for the 2015 Volkswagen Golf TDI Clean Diesel noted a range of 567 highway miles on a single tank, and that the "TDI Clean Diesel engine gives you long range without sacrifice." Consumers, including the named Plaintiff herein, purchased the subject vehicles noted above from the model year 2009 and forward (the "Affected Vehicles") in reliance on statements such as this.

10. Defendant's success is based in large part on promoting their diesel cars as "clean" and "green" vehicles. Indeed, being both highly efficient and "clean" are the centerpieces of Defendant's diesel engine marketing campaign. "Clean Diesel" is in the very name of the vehicles about which Defendant lied.

11. Defendant's outward concern for the environment is put forth beyond just the model names and purported attributes of their vehicles. For example, on the "Environment" page of its website, Volkswagen Group of America states that it takes "environmental responsibility very seriously. When it comes to making our cars as green as possible, Volkswagen has an integrated strategy focused on reducing fuel consumption and emissions, building the world's cleanest diesel engines and developing totally new power systems, which utilize new fuel alternatives."

12. VWoA also trumpeted the fact that the Audi A3 TDI and VW Jetta TDI were named the 2010 Green Car of the Year and the 2009 Green Car of the Year, respectively.

13. Defendant also launched a "Think Blue" program ["Blue" has the same connotation in Europe that "Green" does in the United States], which it explained is part of a policy of being "more responsible on the road and more environmentally conscious—not just in our cars."

14. VWoA supported and directed a website to promote its "clean" diesel technology, www.clearlybetterdiesel.org, which says the technology reduces smog and "meets the highest standards in all 50 states, thanks to ultra-low sulfur diesel (ULSD) fuel and innovative engine technology that burns cleaner."

15. VWoA has charged a substantial premium for the Affected Vehicles, misleadingly marketed as "CleanDiesel." For example, for the 2015 Volkswagen Jetta, the base S (gas powered) model has a starting MSRP of $18,780. The base TDI S CleanDiesel, however, has a starting MSRP of $21,640, a price premium of $2,860. The CleanDiesel premium for the highest trim Jetta model is substantially higher: The highest level gas Jetta SE has a starting MSRP of $20,095, while the CleanDiesel TDI SEL MSRP is $26,410, a $6,315 premium.

### B. Federal and State Emissions Laws and Testing

16. Like all automobiles sold for public use in the United States of America, the Affected Vehicles were and are required under the Clean Air Act, 42 U.S.C. Section 7401, et seq., to be manufactured so that their emissions do not exceed certain standards for pollutants such as carbon monoxide and nitrogen oxide, or NOx. Nitrogen oxide emissions contribute to nitrogen dioxide, ground-level ozone, and fine particulate matter. Exposure to these pollutants has been linked to serious health issues, including asthma attacks and other respiratory illness serious enough to send people to the hospital.

17. Regulations controlling the amount of pollutants such as nitrogen oxide are promulgated under the authority of the Environmental Protection Agency ("E.P.A."). New cars sold in the United States are required to pass tests to ensure that the models as produced are in compliance with regulations. In addition, many states, including the state of California, require periodic testing for pollutants, commonly referred to as "smog" testing. California's smog regulations are administered by the California Air Resources Board, or CARB.

18. Most modern engines, including Volkswagen's "CleanDiesel" engines, use computerized engine control systems to monitor sensors throughout a car's engine and exhaust systems and control operation of the car's systems to ensure optimal performance and efficiency. These functions can include controlling fuel injection, valve and ignition timing, and, as in Volkswagen's "CleanDiesel" engines, operating the engine's turbocharger. The engine control computer can, for example, ensure that the air-to-fuel mixture is correct based on sensor readings such as throttle position, amount of air flowing into the engine, and engine temperature.

19. These engine control computers also receive data from sensors in the car's exhaust system that measure the amounts of chemical substances included in the car's exhaust. That data provides a measure of the engine's operation and efficiency, and is thus used by the engine control computer in operating the car's systems to ensure the desired performance and efficiency. Because modern cars include these sophisticated computers and sensors throughout the car's systems, emissions testing systems use a car's existing sensors to measure the presence of pollutants and track compliance with EPA and state emissions standards. Emissions testing stations plug a diagnostic device into the car's on-board diagnostics ("OBD II") port and use the car's exhaust sensors during the testing procedure to measure the substances emitted. Some states, instead of or in addition to an OBD II diagnostic device, use a measurement probe inserted into the car's exhaust pipe to measure the chemicals emitted.

20. VWoA programmed the engine control computers in the Defeat Device Vehicles with software that detects when the cars are undergoing emissions testing, and then operates the car's engine and exhaust systems to ensure that emissions comply with EPA pollutant standards. When the car is not being emissions tested—that is, under the vast majority of operating conditions—the engine control systems operate the vehicle in a manner that does not comply with EPA emissions requirements.

C. **VWoA Was Issued a Notice of Violation and Required To Recall 482,000 Cars**

21. The E.P.A. accused VWoA of using software to detect when the car is undergoing its periodic state emissions testing. Contrary to the ordinary and expected operation of emissions controls, which are designed to operate at all times, it is only during such tests that the affected VWoA cars' full emissions control systems are turned on. During normal driving situations, the controls are turned off, allowing the cars to spew as much as 40 times as much pollution as allowed under the Clean Air Act, the E.P.A. said. This software produced and used in the Affected Vehicles by VWoA is a "defeat device" as defined by the Clean Air Act.

22. EPA officials issued VWoA a notice of violation and said VWoA had admitted to the use of a so-called defeat device. The recall involves 4-cylinder Volkswagen and Audi vehicles from model years 2009-15.

23. The software was designed to conceal the cars' emission of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog. The pollutants are linked to a range of health problems, including asthma attacks, other respiratory diseases and premature death. Exposure to ozone and particulate matter has been associated with premature death due to respiratory and cardiovascular related effects. Children, the elderly, and people with pre-existing respiratory illnesses are at acute risk of adverse health effects from these pollutants.

24. The recall covers roughly 482,000 diesel passenger cars sold in the United States since 2009, including the 2009-15 Volkswagen Jetta, 2009-15 Beetle, 2009-15 Golf, 2014-15 Passat and 2009-15 Audi A3. Each of these cars was sold with a so-called "defeat device" intended to thwart emissions testing. The state of California has issued a separate notice of violation to the company. California, the E.P.A. and the Justice Department are working together on an investigation of the allegations.

25. The Clean Air Act requires vehicle manufacturers to certify to the EPA that the vehicles sold in the United States meet applicable federal emissions standards to control air pollution. Every vehicle sold in the United States must be covered by an EPA issued certificate of conformity. Under federal law, cars equipped with defeat devices, which reduce the effectiveness of emissions control system during normal driving conditions, cannot be certified. By manufacturing and selling cars with defeat devices that allowed for higher levels of emissions that were certified to EPA, Volkswagen violated the Clean Air Act, defrauded its customers, and engaged in unfair competition under state and federal law.

26. At all times relevant to this action, VWoA was involved in the manufacturing distribution, sale and warranting of the Affected Vehicles under the Volkswagen and Audi brand names throughout the United States. Volkswagen and/or its agents designed, manufactured, and installed the Clean Diesel engine systems in the Affected Vehicles, which included the "defeat device." Volkswagen also developed and disseminated the owner's

6
CLASS ACTION COMPLAINT

manuals and warranty booklets, advertisements, and other promotional materials relating to the Affected Vehicles.

### D. The Recalled Cars Will Be Less Efficient, Less Powerful, and Less Valuable

27. VWoA has been ordered by the EPA to recall the Affected Vehicles and repair them so that they comply with EPA emissions requirements at all times during normal operation. However, VWoA will not be able to make the Affected Vehicles comply with emissions standards without substantially degrading their performance characteristics, including their horsepower and their fuel efficiency.

28. Experts in automotive technology have said that disengaging the pollution controls on a diesel-fueled car can yield better performance, including increased torque and acceleration. "When the pollution controls are functioning on these vehicles, there's a trade-off between performance and emissions," said Drew Kodjak, executive director of the International Council on Clean Transportation ("ICCT"), a research group. He stated, "[t]his is cutting corners." The ICCT, in conducting research on diesel vehicles, first noticed the discrepancy between Volkswagen's emissions in testing laboratories and on the road. It brought the issue to the attention of the E.P.A., which conducted further tests on the cars, and ultimately discovered the use of the defeat device software.

29. As a result, even if VWoA is able to make Class members' Affected Vehicles EPA compliant, Class members will nonetheless suffer actual harm and damages because their vehicles will no longer perform as they did when purchased and as advertised. This will necessarily result in a diminution in value of every Affected Vehicle and it will cause owners of Affected Vehicles to pay more for fuel while using their affected vehicles.

30. As a result of VWoA's unfair, deceptive, and/or fraudulent business practices, and its failure to disclose that under normal operating conditions the Affected Vehicles emit 40 times the allowed levels, owners and/or lessees of the Affected Vehicles have suffered losses in money and/or property. Had Plaintiff and Class members known of the "defeat device" at the time they purchased or leased their Affected Vehicles, they would not have purchased or leased

those vehicles, or would have paid substantially less for the vehicles than they did. Moreover, when and if VWoA recalls the Affected Vehicles and degrades the Clean Diesel engine performance in order to make the Affected Vehicles compliant with EPA standards, Plaintiff and Class members will be required to spend additional sums on fuel and will not obtain the performance characteristics of their vehicles when purchased. Moreover, affected vehicles will necessarily be worth less in the marketplace because of their decrease in performance and efficiency.

31. Plaintiff brings this action individually and on behalf of all other current and former owners or lessees of Affected Vehicles. Plaintiff seeks damages, injunctive relief, and equitable relief for the conduct of VWoA related to the "defeat device," as alleged in this complaint.

**E.    Plaintiff Hall's Purchase**

32. Plaintiff Hall selected and ultimately purchased his vehicle, in part, because of the "CleanDiesel" system, as represented through advertisements and representations made by Volkswagen. Plaintiff Hall purchased a 2015 Golf TDI, from a Volkswagen dealer in Roseville, California, on or about November, 14, 2014 in the belief that the car was environmentally friendly and efficient while offering great diesel performance. Prior to his purchase of the vehicle at issue, Plaintiff recalls viewing television advertisements regarding the CleanDiesel, in addition to verbal representations made to him at Roseville Volkswagen about the CleanDiesel system to Plaintiff. Plaintiff recalls that the advertisements and representations touted the cleanliness of the engine system for the environment and the efficiency and power/performance of the engine system.

33. None of the advertisements reviewed or representations received by Plaintiff (or other class members) contained any disclosure relating to the "defeat device" or that VWoA had purposefully falsified its certification of EPA compliance. Had VWoA disclosed that the CleanDiesel in his vehicle actually emitted 40 times the permitted levels of pollutants, including NOx, he would not have purchased his vehicle with the CleanDiesel engine, or would have paid less for the vehicle.

34. Plaintiff Hall (and the class) has suffered an ascertainable loss as a result of Volkswagen's omissions and/or misrepresentations associated with the CleanDiesel engine system, including but not limited to, out-of-pocket loss and future attempted repairs, future additional fuel costs, and diminished value of his vehicle. Among, other things, Mr. Hall paid a premium over the price of an equivalent model gas-powered Golf.

## V. CLASS ACTION ALLEGATIONS

35. Plaintiff brings this action on behalf of himself and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following defined class (the "Nationwide Class"):

### Nationwide Class

All persons or entities in the United States who are current or former owners and/or lessees of an "Affected Vehicle." Affected Vehicles include, without limitation (diesel models only): Model Year 2009-2015 VW Jetta; Model Year 2009-2015 VW Beetle; Model Year 2009-2015 VW Golf; Model Year 2014-2015 VW Passat; and Model Year 2009-2015 Audi A3.

### The California Subclass

All persons or entities in the state of California who are current or former owners and/or lessees of an "Affected Vehicle." Affected Vehicles include, without limitation (diesel models only): Model Year 2009- 2015 VW Jetta; Model Year 2009-2015 VW Beetle; Model Year 2009-2015 VW Golf; Model Year 2014-2015 VW Passat; and Model Year 2009-2015 Audi A3.

36. Specifically excluded from the Class above are: (a) all federal court judges who preside over this case and their spouses; (b) all persons who elect to exclude themselves from the Class; and (c) VWoA's employees, officers, directors, agents, and representatives and their immediate family members. Also excluded from the Class are VWoA and its subsidiaries and affiliates (including but not limited to Volkswagen A.G. and its subsidiaries); and governmental entities. Plaintiff reserves the right to revise the Class definition based upon information learned through discovery.

**A.     Numerosity**

37.     The class is composed of thousands of owners (approximately 50,000 in California alone, and approximately 482,000 nationwide), making joinder impracticable. The disposition of their claims in a single class action will provide substantial benefits to all parties and to the Court. The exact number of Class Members is unknown, but the class covers in excess of 482,000 vehicles.

**B.     Typicality**

38.     There is a well-defined community of interest among the Class Members. Plaintiff's claims are typical of the Class Members' claims in that the representative Plaintiff, like all Class Members, owns one on the listed vehicles manufactured, marketed, and sold by VWOA. Plaintiff, like all Class Members, has been damaged by VWOA's misconduct. The factual basis of VWOA's misconduct is common to all Class Members and represents a common thread of misconduct and/or acts and/or omissions resulting in similar injuries to all Class Members.

**C.     Commonality**

39.     There are common questions of law and fact making this action appropriate for class action treatment. Some of the common questions include:

  a.     Whether VWOA fraudulently concealed from and/or failed to disclose to the Plaintiff and Class Members the true nature of the emissions standards;

  b.     Whether VWOA's conduct in selling and marketing the listed vehicles was negligent, wanton, or willful;

  c.     Whether VWOA breached its express warranty to Plaintiff and Class Members;

  d.     Whether VWOA breached its implied warranty to Plaintiff and Class Members;

  e.     Whether the performance of the listed vehicles is not as advertised and/or promoted by VWOA;

    f. Whether the Plaintiff and the Class Members are entitled to damages and the amount of such damages; and

    g. Whether the Plaintiff and the Class Members are threatened with irreparable harm and whether they are entitled to injunctive and/or other equitable relief, including requiring VWoA to reimburse the Class, and buy back and/or replace the vehicles.

**D. Adequacy of Representation**

40. Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained the undersigned counsel, with substantial experience in prosecuting class actions. Plaintiff and his counsel are committed to prosecuting this case vigorously on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor his counsel have any interests adverse to those of the Class.

41. A class action is superior to other methods for the fair and efficient adjudication of the subject controversy. Absent a class action, most Class Members will likely find the cost of litigating their individual claims to be prohibitive, and will have no effective remedy at all. Because of the relatively small size of the individual Class Members' claims, few Class Members could likely afford to seek legal redress for VWoA's misconduct. Absent a class action, Class Members will continue to incur damages and be at risk of irreparable harm while VWoA's misconduct will proceed without remedy.

**E. Superiority**

42. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and litigants, and promotes consistency and efficiency of adjudication. Additionally, VWoA engaged in the same or similar misconduct towards the Plaintiff and Class Members, thus requiring court imposition of uniform relief to insure compatible standards of conduct toward the Class as a whole.

## VI.   TOLLING OF STATUTE OF LIMITATIONS

43.   All limitations periods were tolled by the doctrines of fraudulent concealment, the discovery rule, and/or equitable tolling. As alleged herein, VWoA wrongfully concealed the facts relating to the claims alleged. Plaintiff and Class Members did not discover the operative facts that are the basis of their claims because they were concealed from the public, including Plaintiff and the Class Members, by VWoA. No amount of diligence by Plaintiff or Class Members could have led to discovery of these facts because they were kept secret by VWoA and, therefore, Plaintiff and Class Members were not at fault for failing to discover these facts, nor did they have actual or presumptive knowledge of facts sufficient to put them on inquiry.

44.   Class Members had no way of knowing about VWoA's deception with respect to its Clean Diesel engine system and "defeat device." It took federal EPA and California Air Resources Board investigations to uncover VWoA's deception, which involved sophisticated software manipulation on VWoA's part. As reported by the *Los Angeles Times* on September 18, 2015, it took California Air Resources Board testing on a special dynamometer in a laboratory, open road testing using portable equipment, and the use of special testing devised by the Board to uncover VWoA's scheme and to detect how software on the engine's electronic control module was deceiving emissions certifications tests. Plainly, VWoA was intent on expressly hiding its behavior from regulators and consumers.

### First Cause of Action

### Breach Of Express Warranty

45.   Plaintiff incorporates and realleges by reference those paragraphs set out above as though fully set forth herein.

46.   VWoA provided Plaintiff and the Class Members with an express warranty.

47.   This warranty became part of the basis of the bargain.

48.   VWoA breached this express warranty.

49.   VWoA has actual knowledge of the specific common defects associated with the listed Affected Vehicles (described above) and the problems resulting therefrom.

50. VWoA was on notice of the problems from the outset, as it intentionally designed its software "defeat device" to allow the Affected Vehicles.

51. As a result of VWoA's breach, Plaintiff and the Class Members suffered damages.

52. Plaintiff and the Class Members also suffered diminution in the value of their vehicles, and out-of-pocket expenditures.

53. VWoA's conduct is the direct and proximate cause of Plaintiff's and the Class Members' injuries.

54. Plaintiff and the Class Members are entitled to legal and equitable relief against VWoA, including damages, consequential damages, specific performance, rescission, attorneys' fees, costs of suit, and other relief as appropriate.

## Second Cause of Action

## Breach Of Implied Warranty Of Merchantability

55. Plaintiff re-alleges and incorporates by reference each of the paragraphs above.

56. When the subject vehicles left VWoA's possession, they were unmerchantable. Plaintiff and the Class Members used their vehicles in the normal manner for which the vehicles were designed. Despite Plaintiff's and the Class Members' proper use of the vehicles, they failed to perform as required.

57. The vehicles at issue are inadequate and incapable of performing the very tasks they were designed to carry out.

58. VWoA has actual knowledge of the specific defects associated with the listed vehicles and the problems resulting therefrom.

59. To date, VWoA has neither adequately cured the issue nor replaced the defective vehicles.

60. As a result of VWoA's breach of implied warranty of merchantability, Plaintiff and the Class Members suffered damages.

61. Plaintiff and the Class Members also suffered diminution in the value of their vehicles.

**Third Cause of Action**

**<u>Magnuson - Moss Act (15 U.S.C. §§ 2301, *et seq.*)—Implied Warranty</u>**

62. Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

63. Plaintiff asserts this cause of action on behalf of themselves and the other members of the Class.

64. This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 2301(3).

65. VWoA's Affected Vehicles are a "consumer product," as that term is defined in 15 U.S.C. § 2301(1).

66. Plaintiff and the Class members are "consumers," as that term is defined in 15 U.S.C. § 2301(3).

67. VWoA is a "warrantor" and "supplier" as those terms are defined in 15 U.S.C. § 2301(4) and (5).

68. 15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied warranty.

69. VWoA provided Plaintiff and Class members with "implied warranties," as that term is defined in 15 U.S.C. § 2301(7).

70. VWoA has breached these implied warranties as described in more detail above. Without limitation, VWoA's Affected Vehicles are defective, as described above, which resulted in the problems and failures also described above.

71. By VWoA's conduct as described herein, including VWoA's knowledge of the defects inherent in the vehicles and its action, and inaction, in the face of the knowledge, VWoA has failed to comply with its obligations under its written and implied promises, warranties, and representations.

72. In its capacity as a warrantor, and by the conduct described herein, any attempts by VWoA to limit the implied warranties in a manner that would exclude coverage of the

1 defective software and systems is unconscionable and any such effort to disclaim, or otherwise
2 limit, liability for the defective the software and supporting systems is null and void.

3     73.    All jurisdictional prerequisites have been satisfied.

4     74.    Plaintiff and members of the Class are in privity with VWoA in that they
5 purchased the software from VWoA or its agents.

6     75.    As a result of VWoA's breach of implied warranties, Plaintiff and the
7 Nationwide Class members are entitled to revoke their acceptance of the vehicles, obtain
8 damages and equitable relief, and obtain costs pursuant to 15 U.S.C. §2310.

### Fourth Cause of Action

### Breach Of State Consumer Fraud Acts

11     76.    Plaintiff incorporates and realleges the allegations set forth above as if fully set
12 forth herein.

13     77.    Plaintiff and the Class Members are "consumers," as defined by the Consumer
14 Fraud Acts under the laws of the fifty states.

15     78.    VWoA is a "person" within the meaning of Consumer Fraud Acts.

16     79.    VWoA's conduct, as set forth herein, occurred in the conduct of "trade or
17 commerce" within the meaning of the Consumer Fraud Acts.

18     80.    By failing to disclose the common root cause defects in the vehicles (and failing
19 to properly repair the defective engines), VWoA engaged in "unfair" or "deceptive acts or
20 practices" prohibited by the Consumer Fraud Acts.

21     81.    VWoA intended that Plaintiff and the Class Members rely on their
22 misrepresentations and omissions, so Plaintiff and the Class Members would purchase the
23 vehicles. Plaintiff and the Class Members did rely on VWOA's misrepresentations and
24 omissions when they purchased VWoA vehicles.

25     82.    VWoA owed Plaintiff and the Class members a duty to disclose the truth of the
26 defects.

27     83.    Information regarding these defects is material to a reasonable consumer in
28 deciding to purchase a vehicle and considering how much to pay for a vehicle.

84. A reasonable consumer who had known of the defective nature of the listed vehicles would not have purchased VWoA vehicles.

85. VWoA's unfair or deceptive acts, practices, misrepresentations and/or omissions were therefore likely to or had a tendency or capacity to deceive reasonable consumers about the true nature of the vehicles.

86. As a result of the foregoing acts and omissions, VWoA violated the Consumer Fraud Acts of all jurisdictions, and Plaintiff and the Class Members suffered actual damages as described herein. These Class Members are entitled to recover such damages, together with punitive damages, equitable relief, injunctive relief, diminution of value, reasonable attorneys' fees, costs of suit, and such other relief set forth below.

**PRAYER**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, pray that the Court enter judgment against VWoA, and in favor of Plaintiff and the Class Members, and to award the following relief:

A. Certification of the proposed Class and subclass under Rule 23 of the Federal Rules of Civil Procedure and appointment of Plaintiff as Class Representative and his counsel as Class Counsel;

B. A declaration that VWoA is financially responsible for notifying all Class Members of the nature of the problem, and for payment of the costs and expenses of fixing said issues;

C. An award of consequential and other damages for the acts complained of herein;

D. A determination of VWoA's liability for exemplary damages;

E. An award of attorney's fees and costs, plus interest as allowed by law; and

F. Such other and further relief as the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

///

| | | |
|---|---|---|
| 1 | Dated September 22, 2015 | AUDET & PARTNERS, LLP |
| 2 | | /s/ William M. Audet |
| 3 | | William M. Audet |
| | | waudet@audetlaw.com |
| 4 | | Joshua C. Ezrin |
| 5 | | jezrin@audetlaw.com |
| | | 711 Van Ness, Suite 500 |
| 6 | | San Francisco, CA 94102 |
| 7 | | Telephone: 415.982.1776 |
| | | Facsimile: 415.576.1776 |
| 8 | | |
| | | *Attorneys for Plaintiffs* |

17
CLASS ACTION COMPLAINT